**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MYITGROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-cv-00675 |
| | § | |
| FOUNDATION COAL CORPORATION, | § | |
| FOUNDATION COAL DEVELOPMENT | § | |
| CORPORATION, FOUNDATION COAL | § | |
| RESOURCES CORPORATION, | § | |
| LLC., FUSION CONSULTING & DESIGN, | § | |
| LLC, and DAVID DEBOER | § | |
| Individually and d/b/a FUSION | § | |
| CONSULTING, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER ON THE MOTIONS TO DISMISS FOR LACK OF
PERSONAL JURISDICTION BY FOUNDATION COAL CORPORATION,
FOUNDATION COAL RESOURCES CORPORATION, AND
FOUNDATION COAL DEVELOPMENT CORPORATION**

On June 6, 2008, the parties before the court consented to proceed before a United States

magistrate judge, for all further proceedings, including trial and entry of a final judgment, under 28

U.S.C. § 636(c). (Docket Entry #40). In this case, Plaintiff MyITGroup, LCC ("Plaintiff,"

"MyITGroup") alleges that it negotiated a contract with David Taylor of Foundation Coal

Corporation, Foundation Coal Development Corporation, and/or Foundation Coal Resources

Corporation, through David DeBoer and Fusion Consulting, LLC and/or Fusion Consulting &

Design, LLC (collectively, "Defendants"). MyITGroup claims that it provided services under that

contract, but never received the agreed upon payment for doing so. For that reason, it has lodged

several federal and state law claims against all of the named Defendants. Defendants Foundation

Coal Corporation, Foundation Coal Resources Corporation, Foundation Coal Development

Corporation, and David J. Taylor have consented to this court's jurisdiction. (*See* Docket Entries #40 & #54). However, Defendants Fusion Consulting & Design, LLC and David DeBoer, individually and d/b/a Fusion Consulting, LLC (collectively, "Fusion Defendants"), have failed to appear, and the deadline to do so has passed. For that reason, the court has issued an order granting severance of the Fusion Defendants from this action. (Order of Severance, Docket Entry #71).

Pending before the court are motions by Defendants Foundation Coal Corporation ("Defendant," "Foundation Coal Corp."), Foundation Coal Resources Corporation , and Foundation Coal Development Corporation (collectively, "Foundation Coal Defendants") in which they seek dismissal of this action under Rule 12(b) of the Federal Rules of Civil Procedure. (Foundation Coal Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, and to Quash for Insufficiency of Service of Process ["Defendant's Motion"], Docket Entry #5; Foundation Coal Resources Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, and for Failure to State a Claim, and to Quash for Insufficiency of Service of Process ["Foundation Coal Resources Corporation's Motion"], Docket Entry #6; Foundation Coal Development Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, and for Failure to State a Claim ["Foundation Coal Development Corporation's Motion"], Docket Entry #7). Plaintiff has responded in opposition to those motions, and the Foundation Coal Defendants have replied. (Plaintiff's Response to Defendant Foundation Coal Corporation's Motion to Dismiss ["Plaintiff's Response"], Docket Entry #15; Plaintiff's Response to Defendant Foundation Coal Resources Corporation's Motion to Dismiss, Docket Entry #17; Plaintiff's Response to Defendant Foundation Coal Development Corporation's Motion to Dismiss, Docket Entry #16; Foundation Coal Corporation's Reply to Plaintiff's Response to Motion to Dismiss for

Lack of Personal Jurisdiction and for Improper Venue, and to Quash for Insufficiency of Service of Process ["Defendant's Reply"], Docket Entry #18; Foundation Coal Resources Corporation's Reply to Plaintiff's Response to Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, and to Quash for Insufficiency of Service of Process, Docket Entry #20; Foundation Coal Development Corporation's Reply to Plaintiff's Response to Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, and for Failure to State a Claim, Docket Entry #19). In response to Plaintiff's amended complaint, the Foundation Coal Defendants filed supplemental motions to dismiss. (Foundation Coal Corporation's Supplemental Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction, Improper Venue, and Insufficient Service, Docket Entry #22; Foundation Coal Resources Corporation's Supplemental Motion to Dismiss for Lack of Personal Jurisdiction , Improper Venue, Insufficient of Service, and Failure to State a Claim, Docket Entry #24; Foundation Coal Development Corporation's Supplemental Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, Docket Entry #23). Plaintiff has filed sur-replies to those motions, and Foundation Coal Defendants have responded. (Plaintiff's Sur-Reply to Foundation Coal Corporation's Motion to Dismiss, Docket Entry #26; Plaintiff's Sur-Reply to Foundation Coal Resources Corporation's Motion to Dismiss, Docket Entry #27; Plaintiff's Sur-Reply to Foundation Coal Development Corporation's Motion to Dismiss, Docket Entry #28; Foundation Coal Corporation's Response to Plaintiff's Sur Reply to it's [sic] Motion to Dismiss, Docket Entry #30; Foundation Coal Resources Corporation's Response to Plaintiff's Sur Reply to it's [sic] Motion to Dismiss, Docket Entry #32; Foundation Coal Development Corporation's Response to Plaintiff's Sur Reply to it's [sic] Motion

to Dismiss, Docket Entry #30). After considering the pleadings and the applicable law, it is **ORDERED** that the motions by the Foundation Coal Defendants be **GRANTED**.

**Background**

This case arises out of a contract dispute between MyITGroup, a provider of information technology services, and Foundation Coal Corp., a company for which Plaintiff provided those services. Although MyITGroup has also named Foundation Coal Resources Corporation and Foundation Coal Development Corporation as Defendants in this action, Foundation Coal Corp. is the only entity with which Plaintiff has had any contact. For that reason, the jurisdictional analysis is most relevant to Plaintiff's dealings with Foundation Coal Corp., and those contacts are the focus of the court's inquiry.

MyITGroup "provides installation, training and maintenance of modular business software." (*Id.* at ¶ 15). It is a Texas limited liability company with its principal place of business in Houston, Texas. (Plaintiff's First Amended Complaint ["Complaint"] at ¶ 2, Docket Entry #21). Foundation Coal Corp. is a Delaware corporation with its principal place of business in Linthicum Heights, Maryland, but it also has a satellite office in Englewood, Colorado. (Defendant's Motion at ¶ 1). Foundation Coal Corp. "is engaged in the business of holding stock in and providing shared services to affiliated companies that produce and sell coal or are otherwise engaged in a business related to the mining of coal." (*Id.*). Foundation Coal Corp. "has no offices, employees, or registered agents within the State of Texas, and it is not registered to conduct business within the state of Texas." (*Id.*).

In July 2005, Foundation Coal Corp. decided to implement new business enterprise software. (*See* Defendant's Motion at ¶ 4, Ex. A at ¶ 7, 9). To do so, Foundation Coal Corp. executed contracts

with a number of vendors. (*Id.*). One of those was Fusion Consulting, LLC ("Fusion"), a Wisconsin limited liability company. (*Id.*). According to Defendant, Fusion "represented itself to have expertise" in this particular software. (*Id.*). Foundation Coal Corp. and Fusion entered into a "Master Agreement" on July 5, 2005. (Defendant's Motion, Ex. B). Pursuant to that agreement, Fusion was to provide "certain information technology-related services" to implement the new software. (Defendant's Motion, Ex. A at ¶ 9). These services were to be performed at Foundation Coal Corp.'s corporate offices in Maryland, "or as otherwise agreed to by the parties." (Defendant's Motion, Ex. B at ¶ 2a). Fusion agreed to "perform the work . . . and render the services as specifically described" by Foundation Coal Corp. in a number of "Work Orders" issued under the agreement. (*Id.*). The Master Agreement also provided that Fusion "may subcontract for any part of the Services or obligations hereunder without the prior written consent" of Foundation Coal Corp., so long as Fusion guaranteed the performance of those subcontractors. (*Id.* at ¶ 12). The agreement was signed by David Taylor ("Taylor"), "Manager [of] IT and Business Process" for Foundation Coal Corp., and David DeBoer ("DeBoer"), "President" of Fusion. (*Id.* at ¶ 15).

Foundation Coal Corp. began implementing the new software system in the first quarter of 2006. (Defendant's Motion at ¶ 4). Fusion, in fulfilling its obligations under the Master Agreement, subcontracted some of its duties to MyITGroup, though a "Subcontractor Agreement," which was executed on January 11, 2006. (Defendant's Motion, Ex. A at ¶ 11, Ex. C). In this agreement, MyITGroup was to provide specified services "to Fusion or any of its customers." (*Id.* at ¶ 1.1). The exact services were further described in separate documents called "Project Assignments." (*Id.*). Under the terms of the Subcontractor Agreement, MyITGroup was instructed to "invoice Fusion each month for the [s]ervices rendered." (*Id.* at ¶ 2.1). In turn, Fusion would "timely invoice each

customer for whom the Subcontractor has performed work." (*Id.*). Fusion would then pay the subcontractor "within thirty (30) days after receipt for [s]ervices performed in accordance with [the] Agreement." (*Id.*). The Subcontractor Agreement also provided that, "In the event [that a] customer does not timely pay Fusion's invoice(s) for Subcontractor's services, Subcontractor shall have the right to deal directly with the customer." (*Id.*). The contract stated that the subcontractor was "not entitled to any other compensation for its [s]ervices under this Agreement and shall have no interest in Fusion billings to its customers that may relate to the [s]ervices." (*Id.* at ¶ 2.2). The Subcontractor Agreement was signed by DeBoer, this time as "Director of Professional Services" for Fusion, and Zane Edwards ("Edwards"), "Managing Director" for "MyITGroup LTD."[1] (Defendant's Motion, Ex. C).

On January 9, 2006, prior to the finalization of the Subcontractor Agreement, Taylor, of Foundation Coal Corp., sent an email to DeBoer and the Senior Director of Strategic Accounts for MyITGroup, David Geaslen ("Geaslen"). (Plaintiff's Response, Ex. 2A). In that email, Taylor addressed DeBoer and Geaslen individually. To Geaslen, Taylor directed the following portion of the email:

> Thank for you your [sic] consideration in providing myITgroup's services to Foundation Coal. Listed below are the general terms of the offer that I am authorized by Foundation Coal Corporation to extend to you through Fusion Consulting according to the terms of Foundation and Fusion's Master Service Agreement. I appreciate that myITgroup prefers to provide services directly to its clients, however Foundation Coal has a strict vendor management structure and I am not at liberty at this time to open our network up to new bids, contracts, or master service agreements with regards to Information Technology related consulting services.

---

[1] Although it is unclear whether "MyITGroup LTD" and "MyITGroup LLC" are now the same entity, the court will assume that they are, for the purposes of this memorandum.

> For specific language of contract and/or employment, please directly contact a representative of Fusion Consulting.

(*Id.*). In the portion he addressed to DeBoer, Taylor stated that he had "conducted a resume review and interview with Sachin Pimple ["Pimple"]," a MyITGroup employee. (*Id.*). Taylor then informed DeBeor that Foundation Coal Corp. was "prepared to execute a Work Order per the Master Service Agreement for Services for the role of SAP Plant Maintenance Business Architect." (*Id.*). In the Work Order, included in the email, Taylor outlined the details of the position, and stipulated that the work was to be performed at "the Foundation Coal Corporate Office" in Linthicum, Maryland, and at "Foundation Coal's satellite mine sites." (*Id.*). In a subsequent email, dated January 12, 2006, Taylor confirmed that Pimple had accepted the position outlined in the Work Order. (*Id.*).

Taylor also interviewed several other MyITGroup employees for the position of "FI/CO consultant." (Plaintiff's Response, Ex. 2C & 2G). That person was also work from Foundation Coal Corp.'s corporate headquarters in Maryland. (*Id.*). Apparently, several of the candidates did not satisfy Foundation Coal Corp.'s requirements for the position. (Plaintiff's Response, Ex. 2E). In fact, in an e-mail to Geaslen, dated March 22, 2006, DeBoer stated that two of the candidates that Foundation Coal Corp. had interviewed "were terrible." (*Id.*). In response to that email, Geaslen sent an e-mail to Walter Pisarski ("Pisarski") of Foundation Coal Corp. in an attempt to clarify the job requirements. (*Id.*). When Taylor learned that Geaslen had contacted Pisarski directly, he sent an e-mail to DeBoer informing him that Foundation Coal Corp. did not "want these other groups reaching out directly to any [Foundation Coal Corp.] employee." (Plaintiff's Response, Ex. 2F). DeBoer, in turn, sent an e-mail to Geaslen in which he stated, "From this point forward all communication comes through me unless I specifically instruct you to contact a Foundation

employee." (*Id.*). Eventually, in April 2006, Foundation Coal Corp. approved another MyITGroup employee, Annop Kumar, for the "FI/CO consultant" position. (Plaintiff's Response, Ex. 2G).

In November 2006, Geaslen and DeBoer exchanged several e-mails regarding another MyITGroup employee, Anil Sule, whom Foundation Coal Corp. had selected as a "benefits consultant." (Plaintiff's Response, Ex. 2H). In one of those e-mails, dated November 7, 2006, Geaslen asked, "who else can I work with at your firm?" (*Id.*). In his response the following day, DeBoer stated, "In our sales meeting this morning, it was decided that I will be the single point of contact with MyITGroup." (*Id.*).

On July 9, 2007, Geaslen contacted Deboer on behalf of MyITGroup in regard to an outstanding invoice of $203,100.48. (Plaintiff's Response, Ex. 2 at 3). But according to Geaslen, Deboer "rushed off the phone with a heretofore unasserted position that the work by MyITGroup's consultants . . . was substandard of which somehow cancelled the obligation to pay according to the [Subcontractor] Agreement." (*Id.*). The following day, Geaslen sent an e-mail to DeBoer about the unpaid invoices and expressed his "shock" over comments made during their conversation. (*Id.*, Ex. 2I). Geaslen explained that he was surprised at DeBoer's "dissatisfaction," because it was "the first time [DeBoer] had indicated there was a problem with the consultants." (*Id.*). He also remarked that, although DeBoer "had indicated quit [sic] a while ago that [MyITGroup's] first consultant . . . placed at Foundation was not the best, [he] did not indicate this was a major problem or that there should be any change." (*Id.*). One week later, on July 17, 2007, Geaslen sent Taylor an e-mail regarding the unpaid bills. (Plaintiff's Response, Ex. 2I). In this e-mail, Geaslen reported that he was "having a hard time connecting with David DeBoer." (*Id.*). He requested a current phone number for DeBoer, because "his office line [was] disconnected and his cell phone now says it does

not have a voicemail set up which implies to me it has also been canceled." (*Id.*). Geaslen stated

that DeBoer had informed MyITGroup that it "would be paid within a week in early June." (*Id.*).

However, according to Geaslen, DeBoer had not responded to his emails "in months." (*Id.*).

MyITGroup claims that it still has outstanding invoices totaling $203,100.48.[2] (Complaint

at ¶ 24). For that reason, Plaintiff filed suit against Defendants in Texas state court, seeking

damages on the following claims: suit on account, breach of contract, conspiracy to commit fraud,

and fraud. *See MyITGroup, LLC v. Foundation Coal Corporation et al.*, Cause No. 2008-07128

(165th Dist. Ct., Harris County, Tex. Feb. 4, 2008). Defendants subsequently removed the case to

federal court based on the court's diversity jurisdiction. (Notice of Removal, Docket Entry #1, at

¶ 10). Foundation Coal Corp. then filed its motion asking the court to dismiss this action for a

number of reasons. Specifically, it claims that dismissal is warranted for lack of personal

jurisdiction, under Rule 12(b)(2); for improper venue, under Rule 12(b)(3); and for insufficient

service of process, under Rule 12(b)(5).[3] Foundation Coal Corp argues that personal jurisdiction

is lacking in this forum because its contacts with Texas were not "continuous and systematic," and

because it did not conduct activities in Texas that are "sufficient to establish the required "minimum

contacts." (Defendant's Motion at ¶¶ 6, 12). In addition, Defendant claims that an exercise of

personal jurisdiction in this court would violate traditional notions of fair play and substantial justice

because "it did not avail itself of the protections and benefits of doing business in Texas" and the

forum is "such a distance from where events at issue in the lawsuit actually took place." (*Id.* at ¶

13). After a review of the motions, the evidence provided, and the relevant law, the court

---

[2] Foundation Coal Corp. contends that it "fully paid [Fusion] for all of the amounts billed to Foundation Coal Corp. related to the work performed by MyITGroup." (Defendant's Motion, Ex. A at ¶ 12).

[3] Because the court finds that there is no personal jurisdiction, the other contentions are not addressed here.

**ORDERS** that Foundation Coal Corp.'s motion to dismiss be **GRANTED**, and that the claims against it be dismissed.

**Standard of Review**

When a nonresident defendant raises a challenge, under Rule 12(b)(2) of the Federal Rules of Civil Procedure, to a federal court's exercise of personal jurisdiction, the plaintiff "bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)); *accord Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). "The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Luv N' Care*, 438 F.3d at 469. "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Buillion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (quoting *D.J. Invests., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

**Discussion**

Foundation Coal Corp. argues that this court may not exercise personal jurisdiction over it because MyITGroup has not shown that it has sufficient "minimum contacts" with this forum to satisfy the dictates of due process. (Defendant's Motion at ¶ 6). Defendant also complains that allowing this suit to go forward in this forum would offend the traditional principles of fair play and substantial justice. (*Id.* at ¶ 13). In response, Plaintiff argues that "the injury MyITGroup suffered arose out of or relates to [Foundation] Coal Corp.'s contacts with Texas." (Plaintiff's Response at ¶ 3.13). It also alleges that Foundation Coal Corp.'s "contacts with Texas were continuous and systematic." (*Id.* at ¶ 3.20). MyITGroup insists, therefore, that Defendant's contacts with this forum are sufficient to support personal jurisdiction in a court that sits in this state. (*Id.* at ¶¶ 3.13, 3.20–3.21). It is well settled that "[p]ersonal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). A district court must determine whether both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993) (citations omitted). Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Behlin*, 20 F.3d 644, 647 (5th Cir. 1994)).

This constitutional analysis requires Plaintiff to satisfy two threshold requirements. First, it must show that Foundation Coal Corp. "purposefully availed" itself of the benefits and protections of this forum through its "minimum contacts" with it. *See Gundle Lining Const. Corp.*

*v. Adams*, 85 F.3d 201, 204 (5th Cir. 1996) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Such "minimum contacts" can stem from either "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Mink v. AAAA Dev. LLC.*, 190 F.3d 333, 336 (5th Cir. 1999) (citing *Wilson*, 20 F.3d at 647); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). But a foreign defendant's connection to the forum must be of a nature that should cause it to reasonably "anticipate being haled into court" in the forum state. *See Gundle Lining*, 85 F.3d at 204 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)). Second, there must be a showing that an exercise of personal jurisdiction by a particular court will not offend "traditional notions of fair play and substantial justice." *Id.*; *Wilson*, 20 F.3d at 647 (citing *Asahi Metal Indus. Co. v. Sup. Ct. of Calif.*, 480 U.S. 102, 113 (1987)).

"Minimum contacts" that have been established with the forum state can justify an exercise of either "specific" or "general" personal jurisdiction over a nonresident. *Wilson*, 20 F.3d at 647; *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 283 (5th Cir. 1988) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). The requirements of specific jurisdiction are satisfied "if the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action" that is asserted. *See Wilson*, 20 F.3d at 647 (citations omitted). General jurisdiction will attach if the nonresident defendant's contacts with the forum state are both "continuous and systematic," even if its contacts are not directly related to the cause of action. *See id.*; *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003). "The minimum contracts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial contacts in the forum." *Jones v. Petty-Ray Geophysical*

*Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992). In either case, the plaintiff has the burden to show that the court can properly exercise personal jurisdiction over the defendant. *Id.* at 1067.

### Specific Jurisdiction

One who has "purposely directed his activities at residents of the forum" may find himself subject to the specific jurisdiction of courts sitting in that state. *Burger King*, 471 U.S. at 472 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). To exercise specific jurisdiction, properly, "the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining*, 85 F.3d at 205 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). In that regard, "specific jurisdiction over a nonresident exists when the defendant 'purposefully avails' itself of the privilege of conducting activities in the forum, and the plaintiff's cause of action arises out of or relates to that act." *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999) (quoting *Burger King*, 471 U.S. at 476); *see Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). The fact that a nonresident defendant is physically absent from the forum state does not, alone, determine whether the forum can exercise personal jurisdiction over him. *See Burger King*, 471 U.S. at 476. The United States Supreme Court has rejected the notion that lack of physical contact can defeat personal jurisdiction when "a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Id*.

Plaintiff has the burden to establish the court's jurisdiction over the foreign Defendant in this action. *Jones*, 954 F.2d at 1067. MyITGroup alleges that specific jurisdiction is present here, because "the injury MyITGroup suffered arose out of or relates to [Foundation] Coal Corp.'s contacts with Texas." (Plaintiff's Response at ¶ 3.13). In response, Defendant argues that "it did

not purposely direct its activities toward Texas." (Defendant's Motion at ¶ 9). In support of its argument, Foundation Coal Corp. points out that its contract with Fusion to implement the new business software "had nothing whatsoever to do with the performance of any business activity in Texas." (*Id.*).

*Breach of Contract Claim*

Here, Plaintiff contends that this court has specific jurisdiction in the present case because Foundation Coal Corp. contracted with MyITGroup, a Texas resident. (Plaintiff's Response at ¶3.4). This assertion, however, is not supported by the record. The only contracts at issue are the "Master Agreement" between Foundation Coal Corp. and Fusion, and the "Subcontractor Agreement" between MyITGroup and Fusion. (Defendant's Motion, Exs. B & C). The "Master Agreement" was executed by Foundation Coal Corp. and Fusion only, and there is no mention of MyITGroup within that document. (*Id.*, Ex. B). On this record then, there is no contract between Foundation Coal Corp. and MyITGroup upon which specific personal jurisdiction can be based.

But MyITGroup also argues that Fusion's actions on behalf of Foundation Coal Corp. resulted in an injury in this forum, and so, specific personal jurisdiction over Defendant is proper for that reason, as well. (Plaintiff's Response at ¶ 3.4). Plaintiff argues that Fusion acted as Foundation Coal Corp.'s agent when it entered into and performed under the Subcontractor Agreement with MyITGroup. (*Id.*). It asserts that, because Fusion's contacts with the State of Texas are attributable to Foundation Coal Corp., this court may exercise specific personal jurisdiction over that Defendant. (*Id.*). It is true that an agent's contacts with the forum state can subject the principal to personal jurisdiction. *See Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *see also United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant*

*St. Corp.*, 960 F.2d 1080, 1090 (1st Cir.1992).  However, the burden is on the proponent to make

a prima facie showing that an agency relationship exists.  *Dickson Marine*, 179 F.3d at 338.  The

plaintiff can satisfy that burden by showing that the purported agent had either actual or apparent

authority to bind the alleged principal.  *See id.*

In the present case, Plaintiff alleges that Foundation Coal Corp. "empowered Fusion to act

as its agent." (Plaintiff's Response at ¶ 3.4).  In support of its contention, Plaintiff cites to an e-mail

from Taylor in which he informed Geaslen, of MyITGroup, that Foundation Coal Corp. "requires

contracting through Fusion due to a 'strict vendor management structure, [sic] and I am not at liberty

at this time to open up our network to new bids, contracts, or master service agreements with regards

to Information Technology related consulting services.'" (*Id.*) (quoting *Id.*, Ex. 2A) (alterations in

original).  This statement by Taylor, Plaintiff argues, "gives Fusion the apparent authority to act on

[Foundation] Coal Corp.'s behalf to contract with third-parties to provide information technology

related services." (*Id.*).  However, in the same email, Taylor also explained that any work offered

to MyITGroup by Foundation Coal Corp. would be "according to the terms of" the Master

Agreement between it and Fusion.  (*Id.*, Ex. 2A).  The Master Agreement provides that:

> [i]n performing the Services, [Fusion] and all of [Fusion]'s employees, agents and
> subcontractors shall operate as and have the status of an independent contractor and
> **shall not act as or be an agent or employee of [Foundation Coal Corp]**. As an
> independent contractor, [Fusion] will be solely responsible for determining the
> means, manner, and method for performing the Services. [Foundation Coal Corp.]
> shall have no right to control or to exercise any supervision over [Fusion] as to how
> the Services will be accomplished.

(Defendant's Motion, Ex. B at ¶ 2d) (emphasis added).  Based on all of the relevant statements and

contracts, the court is not convinced that Plaintiff has made a prima facie showing that Taylor

granted "Fusion the apparent authority to act on [Foundation] Coal Corp.'s behalf."  Instead, it

appears that Taylor's email to Geaslen was merely explaining that, instead of hiring its own information technology personnel, Foundation Coal Corp. contracted with Fusion for its consulting services. Fusion, under that agreement, would provide the appropriate consultant to satisfy Foundation Coal Corp.'s needs. In other words, Fusion, as an "independent contractor" for Foundation Coal Corp., hired subcontractors, such as MyITGroup, to perform some of its obligations under the Master Agreement. There is no evidence to show that Foundation Coal Corp. ever granted Fusion any authority, express or apparent, to act on its behalf. Because Plaintiff has not presented any other relevant evidence, it has failed to make a prima facie showing that Fusion was acting as an agent for Foundation Coal Corp.

Further, even if Fusion's contract with MyITGroup could be attributed to Foundation Coal Corp., the isolated act of contracting with a Texas company is not sufficient to establish specific personal jurisdiction. *Burger King*, 471 U.S. at 476; *Wilson*, 20 F.3d at 649; *Jones*, 954 F.2d at 1069; *Holt Oil & Gas v. Harvey,* 801 F.2d 773, 778 (5th Cir. 1986); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029–30 (5th Cir. 1983). The Fifth Circuit has held repeatedly that "the existence of a contractual relationship, although relevant, does not automatically establish sufficient minimum contacts." *Dickson Marine*, 179 F.3d at 337 (citing *Burger King*, 471 U.S. at 478). It has also "recognized that the place of contracting and the law governing the contract, while not necessarily determinative, are relevant factors for determining purposeful activity." *Jones*, 954 F.2d at 1069 (citing *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 152 (5th Cir. 1982)). An exercise of jurisdiction may not be proper in cases in which the material performance of a contract occurs outside of the forum state. *See Holt Oil & Gas*, 801 F.2d at 778; *see also Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). In addition, the exchange of communications with a

16

foreign defendant, during the course of developing or carrying out a contract, does not, alone, "constitute the purposeful availment of the benefits and protections of Texas law." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007); *see also Holt Oil & Gas*, 801 F.2d at 778. Nor does mailing payments from the nonresident defendant to the forum state, on its own, establish personal jurisdiction. *See Freudensprung v. Offshore Technical Servs., Inc*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Hydrokinetics, Inc.*, 700 F.2d at 1029.

Here, the Subcontractor Agreement, which Plaintiff claims is the basis for an exercise of specific jurisdiction, was performed in Maryland. (*See* Plaintiff's Response, Exs. 2A & 2H). That agreement contained a choice of law provision that established Wisconsin law as the governing law should any disagreements arise. (Defendant's Motion, Ex. C at ¶ 13). On the other hand, there is evidence that Taylor, of Foundation Coal Corp., did contact Geaslen, a Texas resident, by e-mail and telephone, on seven different occasions. (*See* Plaintiff's Response at ¶ 3.20, Exs. 2B–2H). But those contacts are similar, both in number and in quality, to ones that previously have been deemed insufficient to confer specific personal jurisdiction. *See Hydrokinetics*, 700 F.2d at 1029; *Patterson*, 764 F.2d at 1147; *Jones*, 954 F.2d at 1069. In *Hydrokinetics, Inc.*, for example, specific jurisdiction was questioned in a contract dispute with an Alaskan corporation over the purchase of industrial goods manufactured in Texas. *Hydrokinetics, Inc.*, 700 F.2d at 1027. There, the plaintiff argued that there had been extensive communications in Texas, that corporate officers had traveled to Texas, and that the purchase contract had been created in Texas. *Id.* at 1028–29. The court rejected that argument, however, finding instead that the defendant's

> sole contact with the state of Texas [was] the single, isolated transaction involved in this case, and that transaction was initiated by and substantially negotiated with the seller's representative in Alaska. The agreement entered into by Alaska Mechanical

expressly provided that it was to be governed and construed according to Alaska law.

*Id.* In concluding that an exercise of personal jurisdiction was not proper in a court sitting in Texas, the Fifth Circuit noted that "the fact that Alaska Mechanical may have mailed payment checks into the forum state in exchange for the goods" did not weigh heavily in the analysis. *Id.* The opinion also made clear that "the exchange of communications between Texas and Alaska in the development of the contract, [] in itself is also insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." *Id.* A number of cases from this circuit, and elsewhere, have followed the *Hydrokinetics* reasoning in assessing the merits of a jurisdictional challenge. *See, e.g., Jones*, 954 F.2d at 1069 (5th Cir. 1992); *Stuart*, 772 F.2d at 1194 (5th Cir. 1985) ("[t]he random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and the mailing of payments to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction over [a defendant]"); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (majority of parties' activities were conducted in foreign state, and incidental contacts with forum were found insufficient to confer specific jurisdiction over nonresident defendant); *Barnstone v. Congregation Am Echad*, 574 F.2d 286 (5th Cir. 1978) (negotiations by telephone and mail with Texas architect, regarding construction of a synagogue in Maine, did not confer personal jurisdiction over Maine defendant); *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (under Texas law, "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction"); *compare Gundle Lining*, 85 F.3d at 207 (5th Cir. 1996) (jurisdiction proper despite contacts similar to those in *Hydrokinetics*, because contract terms specified forum state as site to

resolve disputes, and so, "should have made [defendant] aware that it was subject to being haled into a Texas court."). In the present case, Foundation Coal Corp. neither formed a contract with Plaintiff nor traveled to Texas in any capacity relevant to its dealing with MyITGroup. (Defendant's Motion at ¶ 11). Further, and perhaps more importantly, unlike *Hydrokinetics* and the other cases, the record here is uncontroverted that Taylor never appeared in this state. Nor is there any allegation that Foundation Coal Corp. sought business in Texas, or marketed its services here. (*See generally* Complaint). The lone fact that Plaintiff resides in Texas cannot satisfy the requirements for specific jurisdiction in this case, absent a showing on the part of MyITGroup that Defendant purposely availed itself of the privileges and immunities of the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In sum, the contract giving rise to this action and the actual course of dealings fall far short of creating a substantial connection between Foundation Coal Corp. and this forum. The agreement was not negotiated in Texas, was not entered into in Texas, and was not performed in Texas. For those reasons, MyITGroup's breach of contract claims did not "arise out of or relate to" Foundation Coal Corp.'s contacts with Texas. Accordingly, this court cannot properly exercise specific personal jurisdiction over Defendant regarding MyITGroup's breach of contract claims.

*Fraud Claim*

Plaintiff also contends that specific jurisdiction exists here because "[Foundation] Coal Corp. committed a tort, in whole or in part, in Texas." (Plaintiff's Response at ¶ 3.7). MyITGroup alleges that Foundation Coal Corp. committed fraud when Taylor "refer[red] specifically to Fusion Consulting, a company that has never existed, as [Foundation] Coal Corp.'s agent for consulting services." (Plaintiff's Response at ¶¶ 3.7–3.8). Plaintiff insists that, in doing so, Taylor "either

knew Fusion did not exist or asserted MyITGroup's requirement to contract with Fusion without knowledge of whether Fusion Consulting even existed." (*Id.* at ¶ 3.8). MyITGroup claims that it relied upon "these representations in contracting through Fusion as required by Mr. Taylor." (*Id.*). Defendant counters that "by Plaintiff's own allegations, MyITGroup knew full well that it was contracting with Fusion and not Foundation Coal Corp." (Defendant's Reply at ¶ 5).

It is well settled that a complaint supports the exercise of specific jurisdiction if it makes a prima facie case that a non-resident defendant purposefully directed his activities at the forum state and that the cause of action is related to those activities. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001) (citing *Burger King*, 471 U.S. at 472 (1985)); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citing *Helicopteros Nacionales*, 466 U.S. at 414). For example, the Fifth Circuit has held that

> when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions.

*Southmark*, 851 F.2d at 772 (citing *Calder v. Jones*, 465 U.S. 783, 189–90 (1984)). But the court has emphasized, repeatedly, that "the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Panda Brandywine*, 253 F.3d at 869; *Allred*, 117 F.3d at 286 (both quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). The remainder of the jurisdictional analysis requires a showing that the defendant directed "'specific acts towards the forum' . . . such that he should *reasonably* anticipate being haled into court there.'" *Panda Brandywine*, 253 F.3d at 869 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (emphasis in original)); *Burger King*, 471 U.S. at 474. In other words, "minimum contacts" with the forum state cannot be established by a "mere allegation that an out-of-state

defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident." *Id*. at 868 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995)). That is especially true if the allegation is merely conclusory or controverted in any way. *Id.* Instead, on a jurisdictional challenge, the plaintiff must present evidence to show that the defendant "expressly aimed its allegedly tortious activities at [the forum state]" or that he "knew the brunt of . . . injury would be felt there." *Southmark*, 851 F.2d at 772. The Fifth Circuit has observed that, without such evidence,

> a nonresident defendant . . . would have to appear in Texas to defend the suit "no matter how groundless or frivolous the suit may be." Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment.

*Panda Brandywine*, 253 F.3d at 870 (quoting *Wallace*, 778 F.2d at 395).

Here, as discussed earlier, Defendant's contacts with Texas consist only of e-mails and telephone calls between Taylor and Geaslen during MyITGroup's performance under the Subcontractor Agreement. The court has previously determined that those contacts do not give rise to specific jurisdiction in the context of Plaintiff's breach of contract claims. However, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wein Air Alaska, Inc.*, 195 F.3d at 211. In such a case, "[t]he defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Id.* at 213; *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) (holding that a single phone call and allegedly fraudulent materials mailed into forum were sufficient to create specific jurisdiction); *French v. Glorioso*, 94 S.W.3d 739 (Tex. App.– San Antonio 2002) (noting same); *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 648 (Tex. App.– Houston [14th Dist.] 1992, no writ) (holding that if a nonresident sends false information into Texas and causes economic injury

to a Texas resident within Texas, the nonresident purposefully avails himself of the benefits and protections of Texas law); *Rowland & Rowland P.C. v. Texas Employers Indem. Co.*, 973 S.W.2d 432 (Tex. App.– Austin, no pet.) (same). But, as *Wein Air* and later cases have emphasized, specific personal jurisdiction is created only when the tort claims arise out of the defendant's own contacts with the forum state. 195 F.3d at 213; *Lewis*, 252 F.3d at 358–59 (single act sufficient if it "gives rise to the claim being asserted"); *French*, 94 S.W.3d at 745; *Memorial Hosp. Sys.*, 835 S.W.2d at 651. In other words, the critical inquiry is whether the defendant purposely directed his activities to the forum and, in doing so, triggered a tort claim against him. *See Holt Oil &Gas*, 801 F.2d at 777.

In the present case, Plaintiff has not provided evidence, by affidavit or otherwise, to show that any affirmative misrepresentations occurred during the communications between Taylor and Geaslen. In particular, Plaintiff has failed to point to any evidence to show that Taylor, in sending the e-mail to Geaslen, "knew that Fusion did not exist or asserted MyITGroup's requirement to contract with Fusion without knowledge of whether Fusion Consulting even existed." (Plaintiff's Response at ¶¶ 3.7–3.8). Moreover, Plaintiff has not submitted any evidence to show that Fusion does not exist, or did not exist at the time of the relevant communications. On this record then, it does not appear that Taylor or Foundation Coal Corp. directed any tortious acts towards Texas, or were aware that any injury to a Texas resident might result. For that reason, it cannot be said that Taylor knew the "brunt of [any] injury [would] be felt" by MyITGroup, such that he should have "reasonably anticipate[d] being haled into court there to answer for [his] tortious actions." *See Southmark*, 851 F.2d at 772.

22

Further, it appears that the e-mails and telephone conversations on which MyITGroup relies to establish minimum contacts with Texas were made pursuant to Foundation Coal Corp.'s contract with Fusion, The Master Agreement. That agreement required performance in Maryland, and was subject to Maryland law. (Defendant's Motion, Ex. B at ¶ 14f). Clearly, then, "[i]t cannot be said that the activities of [Taylor] were centered on Texas," or that the contract should have made him aware that he was "subject to being haled into a Texas court." *Patterson*, 764 F.2d at 1147; *Gundle*, 85 F.3d at 207; *Burger King*, 471 U.S. at 474; *Panda Brandywine*, 253 F.3d at 869. Indeed, because jurisdiction has been found lacking in instances with more numerous contacts with the forum than those presented here, an exercise of personal jurisdiction is not warranted in this case.

**General Jurisdiction**

Foundation Coal Corp. argues that the "minimum contacts" necessary to establish general jurisdiction are absent in this instance because it has no "continuous and systematic" contact with this forum and it "simply does not do business in Texas." (Defendant's Motion at ¶ 12). In that regard, Foundation Coal Corp. emphasizes that it "has no offices, employees, or registered agents within the State of Texas, and it is not registered to conduct business within the State of Texas." (Defendant's Motion, Ex. A at ¶ 6). That Defendant argues that an exercise of personal jurisdiction is not proper because "none of the affiliated companies to which Foundation Coal Corp. provides shared services reside or maintain an office of regular physical presence in the State of Texas." (*Id.*). In response to these contentions, Plaintiff claims that Foundation Coal Corp. subjected itself to the jurisdiction of this court because it "continually and systematically controlled [Fusion's] relationship with MyITGroup [by] interviewing and informing MyITGroup of travel arrangements for successful candidates." (Plaintiff's First Response at ¶ 3.20).

It is well-established that "where the defendant's forum activities are continuing and systematic, jurisdiction may be proper without a relationship between a defendant's particular act and cause of action." *Jones*, 954 F.2d at 1068 (citing *Helicopteros Nacionales*, 466 U.S. at 414 n.9). In those instances in which general jurisdiction is alleged, the inquiry is broader and demands that a greater amount of substantial activity in the forum state be shown. *See id.* More than an occasional business transaction is required. *See Polythane Sys., Inc. v. Marina Ventures Int'l Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." *Johnston*, 523 F.3d at 609–10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* at 610 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)). A greater degree of contact is required with the forum because the state has no direct interest in the cause of action. *See Bearry v. Beech Aircraft Co.*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952)).

To make a prima facie showing of general jurisdiction, Plaintiff must produce evidence that shows affirmatively "that [Defendant's] contacts with Texas that are *unrelated to the litigation* are sufficient to satisfy due process requirements." *Alpine View Co. Ltd. v. Atlas COPCO AB,* 205 F.3d 208, 217 (5th Cir. 2000) (emphasis added). Here, Plaintiff has failed to provide any evidence of Foundation Coal Corp.'s contacts with Texas that are unrelated to the present litigation. Instead, Plaintiff provides only a list of the telephone and e-mail communications between Foundation Coal Corp. and MyITGroup regarding the events upon which Plaintiff's present claims are based. (*See* Plaintiff's Response at ¶ 3.20). It is undisputed that Defendant "has no offices, employees, or

registered agents within the State of Texas," that it is not registered to conduct business in Texas, and that none of Defendant's affiliated companies "reside or maintain an office of regular physical presence in the State of Texas." (Defendant's Motion, Ex. A at ¶ 6). Because Plaintiff has failed to provide any other evidence regarding Foundation Coal Corp.'s contacts with Texas, Plaintiff has failed to make a showing that it has "substantial" or "continuous and systematic" contacts with the forum that would warrant an exercise of general jurisdiction over it. *Ruston Gas*, 9 F.3d at 419; *Johnston*, 523 F.3d at 609; *Jones*, 954 F.2d at 1068; *Revell*, 317 F.3d at 471. Accordingly, this court cannot properly exercise general jurisdiction over Foundation Coal Corp.

Considering the evidence and the arguments as a whole, Plaintiff has not satisfied its threshold burden to show that Foundation Coal Corp. has the requisite "minimum contacts" with the forum state to allow the court a proper exercise of personal jurisdiction. *See Panda Brandywine*, 253 F.3d at 869; *Mink*, 190 F.3d at 335; *Allred*, 117 F.3d at 281; *Gundle Lining*, 85 F.3d at 204; *Southmark*, 851 F.2d at 772. Even had those minimum contacts been established, Foundation Coal Corp.'s connection with this forum is so remote that it would be unfair and unreasonable to maintain the suit here. *See Jones*, 954 F.2d at 1069–70. As MyITGroup has not shown that Foundation Coal Corp. had the requisite "minimum contacts" with Texas, there is no need to "examine whether exercising specific jurisdiction over [Defendant] comports with 'fair play and substantial justice.'" *See Panda Brandywine*, 253 F.3d at 869. The motion by Foundation Coal Corp., to dismiss the claims against it for lack of personal jurisdiction is **GRANTED**.

### Remaining Foundation Coal Defendants

Foundation Coal Resources Corporation and Foundation Coal Development Corporation have also filed motions to dismiss for lack of personal jurisdiction. In their motions, these

Defendants argue that they are not subject to personal jurisdiction in this forum, because they did not conduct "activities in the State sufficient to establish the required "minimum contacts." (Foundation Coal Resources Corporation's Motion at ¶ 6; Foundation Coal Development Corporation's Motion at ¶ 7).

Plaintiff maintains the burden to establish the court's jurisdiction over these non-resident Defendants, as well. *See Jones*, 954 F.2d at 1067. Federal due process requires Plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Johnston*, 523 F.3d at 609 (citing *Wilson*, 20 F.3d at 647).

*Specific Jurisdiction*

"Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Wilson*, 20 F.3d at 647 (citing *Helicopteros Nacionales*, 466 U.S. at 414 n. 8). In the present case, Foundation Coal Resources Corporation and Foundation Coal Development Corporation argue that they "had no involvement with the work that MyITGroup performed for Fusion Consulting." (Foundation Coal Resources Corporation's Motion at ¶ 10; Foundation Coal Development Corporation's Motion at ¶ 11). Indeed, there is no evidence in the record to show that MyITGroup had any dealings, at all, with Foundation Coal Resources Corporation or Foundation Coal Development Corporation. For that reason, this court cannot properly exercise specific personal jurisdiction over these Defendants.

*General Jurisdiction*

General jurisdiction "exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic." *Johnston*, 523 F.3d at 609. Here, Foundation Coal Resources Corporation and Foundation Coal Development Corporation argue that they have not "had continuous or systematic contacts with Texas," because they "simply do[] not do business in Texas." (Foundation Coal Resources Corporation's Motion at ¶ 11; Foundation Coal Development Corporation's Motion at ¶ 12). Foundation Coal Resources Corporation has presented uncontroverted evidence, by affidavit, to show that it "has no offices, employees, or registered agents within the State of Texas, and it is not registered to conduct business within the State of Texas." (Foundation Coal Resources Corporation's Motion, Ex. A at ¶ 7). Further, it argues that its "only business activity . . . - the ownership of coal reserves and other real property interests - takes place in West Virginia and Pennsylvania." (*Id.* at ¶ 5). Likewise, Foundation Coal Development Corporation has submitted evidence, by affidavit, that its business is "based in Illinois," and it "has no offices, employees, operations, or assets in Texas." (Foundation Coal Development Corporation's Motion, Ex. A at ¶ 6). In contrast, Plaintiff has failed to provide any evidence that either of these Defendants has any presence in this forum. As a result, Plaintiff has not satisfied its burden to show that this court has general personal jurisdiction over these Defendants. *See Johnston*, 523 F.3d at 609.

On this record then, Plaintiff has failed to establish the minimum contacts necessary for the court to exercise personal jurisdiction over these remaining Defendants. *See Panda Brandywine*, 253 F.3d at 869; *Mink*, 190 F.3d at 335; *Allred*, 117 F.3d at 281; *Gundle Lining*, 85 F.3d at 204; *Southmark*, 851 F.2d at 772. Because MyITGroup has not shown that Foundation Coal Resources

Corporation and Foundation Coal Development Corporation had the requisite "minimum contacts" with Texas, there is no need to determine whether an exercise of jurisdiction would violate due process. *See Panda Brandywine*, 253 F.3d at 869. Accordingly, the motions by Foundation Coal Resources Corporation and Foundation Coal Development Corporation, to dismiss the claims against them for lack of personal jurisdiction are **GRANTED**.

**Conclusion**

Based on the foregoing, it is **ORDERED** that the motions to dismiss by Defendants Foundation Coal Corporation, Foundation Coal Resources Corporation, and Foundation Coal Development Corporation are **GRANTED**, and that this action be **DISMISSED**.

This is a **FINAL JUDGMENT**.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.

**SIGNED** at Houston, Texas, this 9th day of September, 2008.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**

28